# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT LOUISIANA

**RHEA DAVIS**                                   **CIVIL ACTION**

**VERSUS**                                        **NO.  16-297-BAJ-RLB**

**BATON ROUGE CITY**
**CONSTABLE'S OFFICE**

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes Defendant, Baton Rouge City Constable's Office, who respectfully files this Memorandum in Support of its Motion for Summary Judgment on the grounds that certain claims of Plaintiff should be dismissed with prejudice for failure to exhaust administrative remedies, and all other claims present no genuine issue of material fact for trial.

### FACTUAL BACKGROUND and PROCEDURAL HISTORY

Plaintiff worked as a Deputy Constable for Defendant from January 19, 2010, through her resignation January 2, 2015.  Defendant is a Department of the City of Baton Rouge, Parish East Baton Rouge Government, which maintains and operates at all times under the City-Parish Non-Discrimination Equal Employment Opportunity Policy.[1]  Plaintiff worked successfully for several years, and in 2012 received a ceremonial promotion to Jail Corporal in 2012. Plaintiff remained in this position until her January 2, 2015 resignation.  Plaintiff resigned from this position in an effort to avoid disciplinary proceedings for her refusal to attend two scheduled

---

[1] See Exhibit P, City-Parish Non-Discrimination Equal Employment Opportunity Policy.

1

fitness for duty exams that, were they passed, would have resulted in her immediate reinstatement with no loss in pay.

After her resignation, Plaintiff filed suit, alleging five employment actions that were violations of employment law.  In the Petition for Damages, Plaintiff alleges disparate treatment claims under Title VII related to the following five employment actions:

- Schedule Change from 0700-1500 to 0800-1700
- Failure to Promote Plaintiff to Jail Sergeant
- Demotion from Jail Corporal position
- Failure to Transfer Plaintiff to Judicial Enforcement
- Placement on Administrative Leave

These employment events occurred chronologically, and factual backgrounds for each event are illustrated as follows:

**Factual Background: Schedule Change**

In 2013, the Constable's Office needed to make a change in operations.  The City Jail was typically open from 6:00am to 5:00pm, with all inmates or arrestees transferred to another facility by 5:00pm.  At this time, both the Jail Sergeant and the Jail Corporal worked a schedule of 7:00am to 3:00pm or 6:00am to 2:00pm on a rotating basis, leaving only subordinate employees to complete the remainder of the day.  After receiving a complaint from a sitting City Court Judge, the Constable's Office decided to change the schedule of one of the Jail supervisors to last until 5:00pm.[2]  Plaintiff's schedule was changed, and it was explained to her that it was an operation decision based on need.[3]  According to Plaintiff, this imposed a significant burden on her.  She requested reconsideration of the schedule change.  The Constable's Office agreed, and

---

[2] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 6
[3] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 8

2

on July 11, 2013, made other arrangements and was no longer requesting a schedule change for Plaintiff.[4]  The entire episode lasted about three weeks.[5]

**Factual Background: Failure to Promote to Jail Sergeant**

In early 2014, the resident Jail Sergeant resigned to go to another law enforcement agency.  The position requires the passing of a Civil Service Exam, and Plaintiff qualified for the Jail Sergeant position, along with three other internal Deputy Constables.[6]  The Civil Service exam sets out the minimum criteria for eligibility for the position; you must first pass the exam, but all persons who pass are eligible for interview and eligible for hire.[7]  The score on the exam sets out the minimum qualifications, but the hiring decision itself rests with the Constable based on a number of factors.

At the request of Constable Brown, Ganiyu Jimoh informally asked a variety of Deputy Constables around the office if they were interested in the Jail Sergeant promotion.[8]  Jimoh asked Plaintiff, and Plaintiff told him she was not interested in the job.[9]  Of all the individuals Jimoh spoke to, the only person who affirmatively stated they wanted the job was Travis Brooks.[10]  Ultimately, however, Plaintiff did apply for and qualified for the position, but another Deputy Constable was selected.   Plaintiff alleged the decision was based on her gender, but the resigning Jail Sergeant (that created the vacancy) was female, and was the first female ever promoted to that position by Constable Brown.

---

[4] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 7
[5] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 9
[6] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 10
[7] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 11
[8] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 3
[9] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 4
[10] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 5

Constable Reginald Brown, Sr., Chief Deputy Larry Navarre, and Captain John Lawton all sat on the interview panel.[11]  All three agree with the selection of Travis Brooks, primarily on the grounds that Brooks was a longer tenured employee, and had a wider range of experience than Plaintiff, as he had worked in multiple divisions and had served in unique roles.[12]  Brooks also had been a Reserve Deputy before obtaining a full-time position, and had volunteered for approximately 2000 hours of service to the community over a multi-year period.[13]  Brooks also had received the Peace Officer Standards and Training certification for Corrections related work.[14]  Brooks' record was exemplary, and the interview panel deemed him a better fit for the position.  Seniority is a factor in hiring and promotional decisions within the City-Parish, in accordance with the City-Parish Collective Bargaining Agreement with the Service Employees International Union Local 21A.  It is not the only consideration, but is a factor included along with many other considerations.  Defendant asserts that Travis Brooks was hired because he was more qualified for the position, in consideration of all factors.[15]

A review of the hiring practices of Constable Brown indicates an upward trend in female hires and promotions.  Constable Brown was the first City Constable to ever promote a female to Sergeant.[16]  Constable Brown was the first City Constable ever to promote a female to the Jail Sergeant position, who was Brooks' predecessor.[17]  Brown has hired females at a rate that far

---

[11] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraphs 10, 12
[12] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraphs 13-14; See also Exhibit D, Affidavit of Travis Brooks, paragraphs 12-17
[13] See Exhibit D, Affidavit of Travis Brooks, paragraph 4
[14] See Exhibit D, Affidavit of Travis Brooks, paragraph 13
[15] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 15
[16] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 35
[17] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 35

exceeded predecessors in this position.[18]   Many of these individuals have been promoted by

Brown.  None of these promotions ever occurred before Constable Brown was elected.[19]

**Factual Background: Alleged Demotion**

As the new Jail Sergeant, Brooks had it within his discretion to remove Plaintiff from the

Corporal position.[20]   Defendant notified Plaintiff of this fact, and Plaintiff viewed that as a

formal demotion.[21]   However, this demotion never occurred, because Brooks retained Plaintiff as

the Jail Corporal with no interruption in duties or privileges.[22]

**Factual Background: Failure to Transfer to Judicial Enforcement**

Plaintiff subsequently applied for a lateral transfer from the Jail Division to Judicial

Enforcement.[23]   The primary responsibilities of a Deputy Constable in Judicial Enforcement are

the serving of subpoena's, civil filing, and criminal warrants.  Plaintiff had previously told the

hiring supervisor she was not interested in this position.[24]   However, Plaintiff did in fact put in a

letter of interest.[25]  Plaintiff was interviewed along with five other candidates, and Plaintiff's

immediate supervisor recommended to the Constable that he would like either Plaintiff, Deputy

Constable Anthony Haynes, or Deputy Constable Mark Hinson.[26]   This was a lateral transfer for

all of these employees, and all were qualified to perform the job.  Constable Brown selected

Anthony Haynes for the position. [27] The primary reason was the lengthy service record of Mr.

---

[18] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 36
[19] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 36
[20] See Exhibit D, Affidavit of Travis Brooks, paragraph 18
[21] See Exhibit G, February 4, 2014 Correspondence regarding promotion of Travis Brooks
[22] See Exhibit D, Affidavit of Travis Brooks, paragraph 19
[23] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 6
[24] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 9
[25] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 10
[26] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraphs 11, 12
[27] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraphs 17-19

Haynes' "street experience."[28]   Plaintiff alleges that Haynes was less qualified, but the truth is, Plaintiff had no idea about Haynes' background in making that allegation.   Haynes had an Associates degree in criminal justice.[29]   Haynes had served at multiple law enforcement agencies in a police officer capacity.[30]   Including time spent as a police officer, and as a probation officer in the adult corrections system, Haynes had more than eight years with "street experience" providing law enforcement services in the community at the time of the transfer.[31]   Haynes had significantly more experience on the street than Plaintiff, which was the deciding factor in that hiring decision.[32]

Plaintiff then submitted the first of two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC").   The first (addressed herein as "Gender Discrimination Charge") outlines factual allegations of gender discrimination for Defendant's decision to promote another Deputy Constable to a Jail Sergeant position.[33]   The first charge further alleges gender discrimination for the failure to award Plaintiff a lateral transfer to the Judicial Enforcement division.[34]   The EEOC issued a Determination its belief that gender discrimination was a factor in the hiring decisions.[35]   However, the Baton Rouge City Constable's Office operates in full compliance with the City-Parish Equal Employment Opportunity policy.[36]   All employees receive adequate training on such topics at the start of their

---

[28] See Exhibit F, Affidavit of Ganiyu Jimoh, paragraph 14
[29] See Exhibit E, Affidavit of Anthony Haynes, paragraph 7
[30] See Exhibit E, Affidavit of Anthony Haynes, paragraphs 11-15
[31] See Exhibit E, Affidavit of Anthony Haynes, paragraphs 11-15; See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraphs 19-20
[32] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 19
[33] See Exhibit A, Charge of Discrimination Based on Gender
[34] See Exhibit A, Charge of Discrimination Based on Gender
[35] See Exhibit N, EEOC Determination
[36] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 33

employment, and through periodic training opportunities.[37] Gender played no role in either of these decisions.

**Factual Background: Retaliation by Placement on Administrative Leave**

On October 20, 2014, Constable Brown received a complaint from an employee that Plaintiff had admitted to her Plaintiff was engaging in illegal drug use off the job.[38] The complaint indicated that Plaintiff was taking illegal drugs, and was doing so in a manner to avoid detection by typical City-Parish drug testing procedures.[39] The complaint alleged that Plaintiff strategically took "mollys" (i.e. ecstasy) on Thursday and Fridays, and that such drug metabolites would be out of her system by Monday in case she were selected for a random drug screen.[40] This complaint also alleged that Plaintiff was suffering from mental health issues that would raise concerns about her ability to perform the daily duties of her position.  As a Deputy Constable, Plaintiff carried a gun, drove a City-Parish law enforcement vehicle, and had the power to arrest and authority to use force to accomplish any arrest, just like any other POST-certified officer.  The complaint alleged that Plaintiff that she was suffering from stress related issues and was engaging in erratic behavior.[41]

Based on the nature of severity of the complaint, Plaintiff was placed on Administrative Leave with Pay pending an investigation by Internal Affairs.[42]  Plaintiff was ordered to take a drug screen consistent with City-Parish drug testing procedures.[43]  A hair follicle screen, while

---

[37] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 33
[38] See Exhibit I, Complaint by Deputy Constable Carol Lindsey-Edwards, pages 1-3; see also See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 22
[39] See Exhibit I, Complaint by Deputy Constable Carol Lindsey-Edwards, pages 1-3
[40] See Exhibit I, Complaint by Deputy Constable Carol Lindsey-Edwards, page 2
[41] See Exhibit I, Complaint by Deputy Constable Carol Lindsey-Edwards, pages 2-3
[42] See Exhibit H, Memo to Rhea Davis regarding Administrative Leave and Internal Affairs Investigation; See also Exhibit Q, Rules Governing Employees in the Classified Service of the City of Baton Rouge, Parish of East Baton Rouge Excerpt Rule IX, Section 5 "Administrative Leave with Pay"
[43] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraphs 25

not typical, was ordered in this case solely because the complaint indicated a pattern of use designed to avoid detection in the typical drug testing protocol.  Plaintiff's drug screen came back negative.  However, in addition to being required to take a drug screen, Plaintiff was to submit to a psychological fitness exam.[44]   This is routine exam that all law enforcement personnel must take at the time of hire.[45] Plaintiff herself had taken this exam in 2010.  Plaintiff was instructed by Internal Affairs Lieutenant Vernon Scott that she was scheduled to take the fitness for duty exam on December 15, 2014.[46]  Had Plaintiff been cleared, she could return to work.  Plaintiff refused to take the exam.[47]  A second exam was scheduled for December 31, 2016.  Plaintiff, through her counsel, was notified of the exam requirement.  At this point, Plaintiff was still in paid status and was still enjoying all the benefits of her employment, including wages, accrued leave, insurance, and other emoluments of service.  Plaintiff refused to take the exam, this time failing to appear at the testing facility at all.  On December 31, 2014, Plaintiff was notified she would be placed on leave without pay pending disciplinary proceedings for refusing to follow a direct order.[48]  Plaintiff resigned January 2, 2015.

Plaintiff then submitted the second charge (addressed herein as "Retaliation Charge") alleges retaliation when Plaintiff was ordered to submit to hair follicle drug testing after a subordinate employee filed a complaint containing personal information about Plaintiff's drug use and mechanism for defeating the urine-based drug testing procedures.[49]  The EEOC issued

---

[44] See Exhibit J, Correspondence to Rhea Davis regarding Fitness for Duty requirement, pages 1-2; see also See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 26
[45] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 27
[46] See Exhibit K, Memo to Rhea Davis from Lieutenant Vernon Scott regarding Fitness Exam
[47] See Exhibit L, Memo from Lt. Vernon Scott to Constable Brown regarding refusal by Rhea Davis
[48] See Exhibit M, Memo to Rhea Davis from Constable Brown  regarding Leave Without Pay status
[49] See Exhibit B, Charge of Discrimination by Retaliation

its determination that, following its investigation, it was unable to conclude the information obtained established a violation of the statutes.[50]

Defendant moves for Summary Judgment on the grounds that Plaintiff's disparate treatment claims for the Schedule Change and the Demotion should be dismissed because these claims were not identified in Gender Discrimination Charge of Discrimination, and Plaintiff therefore failed to exhaust her administrative remedies on these claims.   Moreover, Plaintiff cannot establish she suffered an adverse employment action regarding the schedule change, alleged demotion, and placement on Administrative Leave With Pay, as these actions were *de minimis* and do not rise to the level of an ultimate employment action.   Finally, Defendant proffers a legitimate, non-discriminatory reason for all five allegations of discrimination, as more fully described below.   Therefore, Defendant seeks summary judgment on the grounds that there is no genuine issue as to material fact and that the Defendant is entitled to judgment as a matter of law.

## LAW AND ARGUMENT

**A.**   **Plaintiff's Title VII Claims for Disparate Treatment Regarding the Schedule Change and Alleged Demotion Should Be Dismissed for Failure to Exhaust Administrative Remedies as No Factual Allegations Regarding Such Claim Appear in the Charge of Discrimination.**

It is well-settled that before a plaintiff can bring an action in federal court under Title VII, she must first exhaust available administrative remedies. *See* 42 U.S.C. § 2000e–5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir.2002); *Ellzey vs Catholic Charities Archdiocese of New Orleans*, 833 F. Supp. 2d 595, 599 (E.D. La. 2011).   Failure to comply with

---

[50] See Exhibit O, Dismissal and Notice of Rights on Retaliation Charge of Discrimination

this requirement will result in dismissal of a plaintiff's claim. *Ellzey*, 833 F. Supp. 2d at 600;

*Reed v. Northrop Grumman Ship Sys. Inc.*, No. 04–1214, 2004 WL 2115596, at *2 (E.D.La.

Sept. 17, 2004).  This is the typical outcome when a plaintiff fails to check the correct box

identifying the alleged reason for the disparate treatment.  It is also the outcome when the

plaintiff fails to allege facts in the Charge itself of any pending claims.

A plaintiff fails to exhaust her administrative remedies as to a particular claim if her

Charge does not contain the claim or make allegations giving rise to the claim. *Oramous v.*

*Military Dep't of Louisiana,* 2007 WL 2344921, at *2 (E.D.La. Aug. 15, 2007) (dismissing

claims on the basis of finding that in addition to not checking the retaliation box on the charge

form, there was no mention of any conduct in the particulars of the charge).  Plaintiff's Charge of

Discrimination, to be sufficient to maintain a claim, must be included within the scope of the

EEOC Charge and investigation that can reasonably be expected to grow out of the charge of

discrimination. Several courts in the Fifth Circuit have held that a plaintiff fails to exhaust his/her

administrative remedies as to a particular claim if her charge does not contain the claim or make

allegations giving rise to the claim. *May v. FedEx Freight Se., Inc.*, 649 F.Supp.2d 451, 456

(M.D.La.2009)(plaintiff did not the check the 'Retaliation' box nor make any factual allegations

of retaliation and therefore failed to exhaust administrative remedies); *Lee v. Kroger Co.,* 901

F.Supp. 1218, 1224 (S.D.Tex.1995) (dismissing a portion of plaintiff's claims where the charge

contained no particular factual allegations); *Oramous v. Military Dep't of Louisiana*, 2007 WL

2344921, at *2 (E.D.La. Aug. 15, 2007) (finding a failure to exhaust when, in addition to not

checking the retaliation box on the charge form, there was no mention of any retaliatory conduct

in the particulars of the charge);

In this case, Plaintiff puts forth three charges of discrimination in her two EEOC Charges: Failure to Promote to Jail Sergeant, Failure to Transfer to Judicial Enforcement, and Retaliation.   Nowhere in the Gender Discrimination Charge does Plaintiff identify facts supporting her claim for discrimination related to the Schedule Change, nor does she allege facts in the Charge regarding the Alleged Demotion.   Therefore, these two bases for her gender discrimination cause of action should be dismissed for her failure to exhaust administrative remedies.

**B.     Plaintiff Cannot Establish a Prima Facie Case for Sex Discrimination Regarding the Schedule Change, the Alleged Demotion, and the Placement on Administrative Leave Because There was No Adverse Employment Action**

To establish a prima facie case of discrimination in employment, an employee must demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *See, e.g., Abarca v. Metro. Transit Auth*., 404 F.3d 938, 941 (5th Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing the burden-shifting framework and explaining that as the facts will vary from case to case, so too, will the specific prima facie proof required).

To establish a discrimination claim under Title VII, a plaintiff must prove that he or she was subject to an "adverse employment action"—"a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014), *See also Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281–82 (5th Cir.2004).  However, "[a]dverse employment actions include only ultimate

employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 508 (5th Cir. 2014).   *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action under Title VII. *Hunt v. Rapides Healthcare Sys*., LLC, 277 F.3d 757, 769 (5th Cir.2001).   The law requires the employee be subjected to an "ultimate employment decision" in order to sustain a discrimination claim.   In *Webb v. Cardiothoracic Surgery Associates*, 139 F. 3d 532 (5th Cir. 1998) the Fifth Circuit stated that the discrimination laws are "concerned only with ultimate employment decisions including hiring, discharging, promoting, compensating or granting leave, and not every decision made by employers that arguable might have some tangential effect upon those."

> **i.      The schedule change imposed on Plaintiff was not an adverse employment action because it lasted at most three weeks, was revisited at Plaintiff's request and changed back to her requested time.**

Plaintiff testified she was initially ordered to change her schedule from 7:00am to 3:00pm to work 8:00am to 5:00pm, with a one hour lunch.   This order was given to her by Chief Deputy Larry Navarre.   At the time, this change was imposed because both supervisory personnel in the Jail were leaving for the day by 3:00pm, and the Jail remained open until 5:00pm.

Defendant does not agree that a two hour schedule change would rise to the level of an adverse employment action sufficient to make out a claim under Title VII.   However, no analysis of this is truly necessary, because of what happened next.   Plaintiff complained that the schedule change imposed a hardship on her in her employment, and had multiple meetings with Constable Brown about this issue.   Ultimately, the decision was reversed three weeks later, and Plaintiff

was allowed to return to her prior schedule. Defendant's position is that three weeks of a schedule change constitutes a *de minimis* employment action, insufficient to fulfill the requirement for a prima facie claim, as it is not an "ultimate employment action" as required under the holding in *Webb, supra*.

**ii.     The alleged demotion imposed on Plaintiff never occurred and was not an adverse employment action.**

Plaintiff's Petition for Damages outlines a claim that she was subject to demotion by virtue of her being on maternity leave. There is no factual dispute about this claim; the incoming Jail Sergeant was allowed, per Departmental custom, to select the individual who would receive the ceremonial title of Corporal. The Department was notified that the incoming Jail Sergeant would be allowed to select his/her Corporal. However, incoming Jail Sergeant Travis Brooks decided to retain Plaintiff in the Corporal role. Plaintiff never actually had the title or benefits thereof taken away from her. Regarding the Alleged Demotion claim, there was no actual employment action taken.

**iii.    The Placement on Administrative Leave With Pay was not an adverse employment action.**

Plaintiff was placed on Administrative Leave With Pay, under the City-Parish Personnel Rules, for the purposes of investigating a complaint by subordinate employee. The complaint, as outlined above, contained factual allegations of illegal drug use and psychological challenges. However, the reason that Plaintiff's placement on Administrative Leave was not an adverse employment action really has nothing to do with the complaint; it has to do with City-Parish Personnel Rules. When an employee is on Administrative Leave With Pay for the purposes of conducting an investigation, the employee loses no pay, benefits, insurance, accrual of leave, or

any other benefit.[51]  During the entire period of Administrative Leave, Plaintiff earned her salary and maintained all benefits to which she would have been entitled to as a regular on-duty employee.  Therefore, because of the Personnel Rules, Plaintiff suffered no financial loss and was paid up until her second refusal to take the fitness for exam.  She then resigned.  The Placement on Administrative Leave with Pay does not meet the criteria for an ultimate employment action under *Webb, supra*.

Therefore, Plaintiff cannot make a prima facie showing of a Title VII violation related to the Schedule Change, Alleged Demotion, and Placement on Administrative Leave with Pay, as those actions were *de minimis*, and do not rise to the level of ultimate employment decisions for which a Plaintiff may seek redress under Title VII.   None of these three actions affected Plaintiff's compensation, pay, benefits, use of leave, or any other significant employment actions.  The Fifth Circuit in *Webb, supra,* outlined that discrimination laws are concerned only with ultimate employment decisions including "hiring, discharging, promoting, compensating or granting leave. . . ."  These three allegations fail this test and there is no genuine issue of material fact that these claims are not triable Title VII claims.

**C.     The Only Potentially Adverse Employment Action Taken Were Based on Legitimate, Non-Discriminatory Reasons**

Once an employee has made out a prima facie case, an inference of intentional discrimination is raised. *LaPierre v. Benson Nissan*, 86 F.3d 444, 448 (5th Cir.1996). The burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer can provide a legitimate nondiscriminatory explanation, the inference of

---

[51] See Exhibit C, Affidavit of Baton Rouge City Constable Major Reginald Brown, Sr., paragraph 24

discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for bias. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  This approach is referred to by courts as the McDonnell Douglas analysis or framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. To carry this burden in a discrimination case, the plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir.2001).

Defendant offers, as its legitimate, non-discriminatory explanation, for each alleged adverse employment action, as follows:

**Schedule Change:**

The schedule change claim was put forth as an operational decision by the Chief Deputy, in an effort to address lack of supervisory personnel in the City Jail for the last two hours it was open.  Plaintiff's schedule change was not related to her status as a female, but was instead related to a legitimate need by the employer regarding staffing needs.

**Failure to Promote to Jail Sergeant Claim:**

The individual hired (Brooks) was a longer tenured employee who had worked both in the Jail and in other divisions for Defendant.  The individual hired had an exemplary service record, including a substantial amount of hours of volunteer work prior to full-time hire, and 10 years of service for the Defendant in a variety of capacities.  The individual hired was simply more qualified for the promotion at that time. The reason for hire was not motivated by gender discrimination, but simply to select the best person available in that position at the time of hire.

15

**Demotion from Jail Corporal:**

The Jail Corporal position is left to the discretion of the Jail Sergeant. Plaintiff was notified that the Jail Sergeant would be entitled to make that decision, and put someone other than Plaintiff in that position. Ultimately, the Jail Sergeant selected Plaintiff. The decision to advise Plaintiff of a possible demotion was strictly an operating practice of Defendant and was not motivated in any way by a desire to discriminate against Plaintiff.

**Failure to Transfer to Judicial Enforcement:**

The individual hired (Haynes) was a more experienced candidate for the Judicial Enforcement position. The individual hired had a lengthy service record in other law enforcement agencies as a police officer, and had substantially more street experience than Plaintiff. Because the duties of the position called for significant work on the street, the individual hired was a more ideal fit for the transfer based on the entirety of his career. The reason for hire was not motivated by gender discrimination, but simply to select the best person available in that position at the time of hire.

**Placement on Administrative Leave with Pay:**

Administrative Leave With Pay is an appropriate management decision when a serious complaint is made that an employee's behavior jeopardizes her effectiveness in the position. The complaint raised significant questions about Plaintiff's behavior, such that an investigation was warranted under the Personnel Rules of the City-Parish and given the nature of the position Plaintiff occupied. Plaintiff remained in paid status, with all the benefits of regular employment while an investigation started. Plaintiff was only subject to removal from this status after she unilaterally refused to attend two scheduled fitness for duty exams. Had she attended and passed, as she had done five years before, she would have been reinstated to her position with no

16

loss in pay.  Defendant had every right and obligation to investigate the claims and take action to ensure that Plaintiff was fit for duty when planning for a return to the workplace.

## CONCLUSION

For the above stated reasons, Defendant is entitled to summary judgment on all of Plaintiff's claims.  Plaintiff has failed to exhaust administrative remedies regarding the claims surrounding the schedule change and the alleged demotion.  Moreover, Plaintiff cannot establish she suffered an adverse employment action regarding the schedule change, alleged demotion, and placement on Administrative Leave With Pay.  Finally, Defendant proffers a legitimate, non-discriminatory reason for all five allegations of discrimination.   Based on the evidence submitted, Plaintiff cannot put forth a genuine issue of material fact regarding any of her Title VII claims, and the Court should grant Defendant's Motion for Summary Judgment in full, dismissing Plaintiff's claims with prejudice and at Plaintiff's cost.

**BY ATTORNEYS:**

**LEA ANNE BATSON**
**Parish Attorney**

**/s/ Marston Fowler**
**Marston Fowler T.A. (29719)**
**Office of the Parish Attorney**
**P.O. Box 1471**
**Baton Rouge, LA   70821**
**(225) 389-3114 - Telephone**
**(225) 389-5554 - Facsimile**
**Mfowler@brgov.com**

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2017, a copy of the above and foregoing pleading,

17

the Motion for Summary Judgment, was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for the Plaintiff, Karl Bernard, by operation of the court's electronic filing system.

**/s/ Marston Fowler**