UNITED STATES DISTRICT COURT
MIDDLE DISTRICT LOUISIANA

**RHEA DAVIS**                                             CIVIL ACTION

**VERSUS**                                                  NO. 16-297-BAJ-RLB

**BATON ROUGE CITY
CONSTABLE'S OFFICE**

### AFFIDAVIT OF MAJOR REGINALD BROWN, SR.

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared:

**REGINALD BROWN, SR.**

who after being duly sworn did depose and state as follows, based upon his personal knowledge:

1. I am the elected Baton Rouge City Constable, having first been elected in 2000 and began service in 2001.
2. I am familiar with Deputy Constable Rhea Davis, as she reported in my chain of command since her hire by me in early 2010.
3. Rhea Davis served as Deputy Constable working in the City Jail during her period of employment.
4. Davis was awarded a ceremonial promotion to Jail Corporal in 2012.
5. At the time of Davis' promotion to Jail Corporal, she reported to a female Jail Sergeant, Terrica Williams.
6. In 2013, an issue arose with a City Court Judge regarding a staffing concern in the City Jail. At the time, both the Jail Sergeant and the Jail Corporal worked an early shift, leaving no supervisor on duty past 3:00pm. In order to address the concerns, we decided to make a staffing change, moving the schedule of the Jail Corporal back to allow for supervisory personnel to be on duty the entire time the Jail was open.
7. When Davis complained to upper management this change would impose a hardship on her, our office made other arrangements and returned Davis to her prior schedule. Her schedule was only changed for a few weeks before it returned to her original schedule.
8. The motivation behind the schedule change had nothing to do with Davis; it was simply an operational decision to improve services. After Davis illustrated the challenges the change created for her, other arrangements for staffing coverage were made.
9. When Jail Sergeant Terrica Williams resigned in late 2013, four internal candidates passed the civil service exam and qualified for the possible promotion to Jail Sergeant.

10. The four candidates that qualified were all offered interviews. Deborah Morris declined an interview. Travis Brooks, Rhea Davis, and Carol Lindsey-Edwards all were interviewed by me, Captain John Lawton, and Chief Deputy Larry Navarre.
11. All three persons interviewed passed the Civil service exam for the position. The Constable's Office is only allowed to hire any individual who meets the minimum qualifications on the test. However, our office is empowered to select any person who is qualified by the exam, regardless of the score they made.
12. All three individuals on the interview panel agreed that Travis Brooks should be selected.
13. Travis Brooks was the best candidate for the job when factoring in his exemplary service record as a Deputy Constable. At the time, Brooks was the applicant with the longest tenure at the Constable's Office.
14. The interview panel considered the experience of all candidates, their length of service with the Constable's Office, and their background in law enforcement. Seniority was a factor in the decision, but it was only one factor used to select Brooks.
15. Rhea Davis was not denied a promotion, but she was simply not hired as Jail Sergeant because there was another more qualified candidate.
16. Rhea Davis was never demoted while she worked in the Constable's Office. I advised the incoming Jail Sergeant (Brooks) he had the right to select his own Corporal, as it was our custom and practice to handle it that way. Ultimately Brooks selected Davis to remain as his Corporal. Davis never lost any of the privileges of being designated Jail Corporal.
17. I was also involved in the decision to transfer Anthony Haynes to the Judicial Enforcement Division instead of Rhea Davis. I, along with Captain John Lawton and Chief Deputy Larry Navarre, received a recommendation from the supervisor in Judicial Enforcement, Ganiyu Jimoh, that we should hire either Rhea Davis or Anthony Haynes.
18. Haynes was selected because the Judicial Enforcement position involved substantial time on the street and in the community serving warrants and subpoena's. Captain John Lawton and I agreed that Haynes was the best fit for the job.
19. Of all the candidates seeking the Judicial Enforcement position, Haynes' experience in previous stints in law enforcement as a police officer and probation officer, and the extensive contacts he had in the community, tipped the scales in his favor.
20. At the time the hiring decision was made, Haynes had over eight years of experience on the street, and Davis had none.
21. Rhea Davis' status as a female had no bearing on either of these hiring decisions.
22. In late October 2014, I received a complaint from the Jail division regarding off the job misconduct by Rhea Davis. The allegations were serious enough to warrant placing her on Administrative Leave With Pay and ordering an investigation.
23. At my direction, Rhea Davis was investigated by my Internal Affairs personnel following an allegation from a subordinate employee that she engaged in illegal drug use, and did so in a manner that would avoid detection in the City-parish drug testing program. The complaint also alleged mental health issues that raised serious concerns about Davis' fitness for the position at the time.
24. During the investigation, and pursuant to our policy, Rhea Davis was placed on Administrative Leave with Pay and lost no pay, benefits, or accrual of leave while under investigation.

25. Davis was ordered to take a drug test. She was specifically ordered to submit a hair follicle sample. The typical procedure involves a urine screen. The hair follicle screen is available when circumstances warrant. Since the complaint included information about Davis' ability and intent to circumvent the urine screen, our office ordered the submission of a hair sample. Davis passed the drug test.
26. Davis' second and only other obligation to return to duty was to submit to a psychological exam with the City-Parish contract psychiatrist who performed law enforcement psychological fitness for duty exams.
27. Davis had already taken this exam at the time of hire, as passing this exam is a pre-employment requirement.
28. Davis, on two separate occasions, refused to take for her psychological fitness for duty exam.
29. At the first appointment, Davis appeared but refused to take the exam. I was notified by Internal Affairs personnel that she was repeatedly advised to take the exam and refused.
30. Our office afforded her the opportunity to reschedule, and an appointment was made for her. She did not appear for the second exam.
31. After the second refusal, Davis was notified she was subject to disciplinary proceedings for refusing the exam, and that she would be immediately taken off Administrative Leave With Pay and placed on leave without pay pending the disciplinary hearing. She resigned two days later.
32. Rhea Davis' status as a female had no factor in my decision to consider discipline for refusing the order.
33. As the lead law enforcement officer and manager of the Baton Rouge City Constable's Office, I ensure that my Department is in compliance with the City-Parish Equal Employment Opportunity policy. I also ensure that all employees receive adequate training on such topics at the start of their employment, and through periodic training opportunities.
34. I vehemently disagree with the findings of the investigation of the Equal Employment Opportunity Commission. Gender played no role in any of these decisions. It is my opinion that the EEOC based its finding on the speculation of then Chief Deputy Larry Navarre.
35. My record as a City Constable reflects an upward trend in hiring and promoting female employees. I was the first City Constable to ever promote a female to Sergeant. Moreover, I was the first City Constable ever to promote a female to the Jail Sergeant position, who was Brooks' predecessor.
36. I have personally hired females at a rate that far exceeded my predecessors in this position. Many of these individuals have been promoted by me. I have hired at least females in my department since my election. At least three have been promoted to Corporal, and at least three have been promoted to Sergeant. None of these promotions ever occurred before I was elected.
37. The findings of the EEOC investigation indicated discrimination was a motive. However, this finding was based on the speculation of an employee, who has acknowledged that I never stated any desire to make any hiring decision based on gender.

The Affiant swears that he is competent to testify to the matters contained herein and that all of the allegations of fact above are true and correct to the best of her personal knowledge, information and belief.

_____
REGINALD BROWN, SR.

SWORN TO AND SUBSCRIBED before me, Notary Public this 21st day of February, 2017.

_____
NOTARY PUBLIC

**JOHN MARSTON FOWLER**
BAR ROLL NO. 29719
EAST BATON ROUGE PARISH
MY COMMISSION EXPIRES AT DEATH