

EXHIBIT I

October 22, 20014

To: Lt. V. Scott

From: Dy. C. Lindsey-Edwards

Re: October 20, 2014 incident with Cpl. R. Davis

On the morning of October 20, 2014, I was assigned transport duties and accompanied by Dy. Smith. Upon completing the morning transport, Dy. Smith escorted the inmates onto the line, whereas I went directly into the control room. I needed to use the restroom and I as was unloading my items, I informed Cpl. Davis that we had everyone. Dy. Hatfield was also present in the control room. I asked Hatfield if he would give us a hand, implying Dy. Smith and myself with securing the inmates. I used the restroom and when I reentered the control room Dy. Syas was present Hatfield had stepped out. Cpl. Davis then made a statement implying that I had ignored or did not inform her whom I did or did not transport, which I know that I did before entering the restroom. I felt and sensed from previous situations, which she upset that I was not engaging in our typical form of talk due to our personal relationship outside the office. I also felt it necessary to remove myself from the setting and then exited the control room. As I was exited she summons for me and then sent Dy. Syas to come and get me to return under the guise of "professional" conversation. I told dy. Syas that he might want to exclude himself from the situation as it was of a personal nature instead of professional. Cpl. Davis then summons me twice on the radio and summons for Sgt. Brooks. She then called the jail phone line requesting my presence in the control room, giving me a directive that I was ignoring a professional request. She stated that it was my supervisor talking. I returned to the control room and she immediately started ranting that I had ignored her and that I needed to inform her whom I did or did not transport. I told her she was being petty and irrational, because I informed her that I had everyone listed on the transport.

Cpl. Davis was aware that I have made the decision to clearly established boundaries in the workplace when it came to our "friendship" because of the following reasons; she on numerous occasions gave me ultimatums on my allegiance to her or to the Sergeant of the jail; I believed that her erratic behavior stemmed from bitterness regarding Sgt. Brooks placement as the jail sergernt over her being selected; countless occasions she had expressed that I should extend loyalty to her at work on her issues that she

was against on a professional level; she expressed that my work ethic was not up to par and that the jail crew had expressed to her that I was given preferential treatment; in contrast, she expressed resentment when I attempted to make myself more present in other areas of the jail besides in the control room with her. On several occasions she has attempted to discipline me or have me disciplined whenever she felt personally slighted.

It is because of this behavior on October 20, 2014, that I requested a meeting with Sgt. Brooks privately to discuss my concerns. I felt no other recourse but to inform my superiors because of her irrational request that be sent home. I informed Cpl. Davis that I would be informing administration that she voluntarily admitted to recreational illegal drug use, specifically "Mollys" in the beginning of September 2014, during one of our telephone conversations.

As was normal in our outside friendship, we spent time together on speaking to one another on the telephone, text messages, Face book and outings. We also share a mutual friend and occasionally we all spent time with one another on three way calls, mass texting and one on one time/conversations.

I believe by time stamps from test messages between the three of us, that September 14, 2014 is the date when Cpl. Davis voluntarily told me that she "pops pills to reduce stress" I asked her what kind of pills and she said "mollys". I asked her was she joking and she told me that she was serious. I asked her where did she get them from, wasn't she concerned with city parish random drug screens and expressed my concerns over illegal drug use, and how was she taking care of her kids when she used these pills. She told me that she would not tell me who supplied the pills. In regards to the random drug screening, she told me that she would take them on Thursday or Fridays nights because they only stayed in your system for 2-3 days. She also informed me that her husband wasn't aware of her usage and that it created a euphoric feeling that did not interfere with her parental care of her kids.

I fussed at her and pleaded that she stop/flush any remaining pills down the toilet. I reminded her that she could seek medical intervention that included therapy and prescriptive medications. I reminded her of all the many blessings in her life and that she was basically foolish for jeopardizing her health, family and career. She promised me that it was recreational and that she would stop after finishing the remaining pills in her possession.

On September 23, 2014, an incident occurred between Cpl. Davis and another jail staff. Cpl. Davis became upset with me for not coming to her defense and used the "friend" card. She and I were assigned as the transport deputes for this date. She refused to ride with me in the truck citing that she would tail me in the unit. I insisted that we ride together to

discuss the incident between he the other jail staff. That it was crucial for her to allow the clear boundaries of professional and personal interactions to be separate in our workplace. I expressed that she was sending mixed messages to me, that she was being a hypocrite in directives and discipline; one minute she wants me to not do an assigned task because of her differences with the sergeant and then the next minute she would want to discipline me for not doing something to her satisfaction. She began fumbling with her phone and I asked her if she was recording our conversation, which she responded "if you don't want to be recorded, I'd advice you to stop talking." I then text her instead, because I felt that she indeed was recording and because she has expressed previously that Terrica Williams recorded conversations in the workplace and that it was legal to do so. I then text her; copies of that conversation has been provided to Lt. V. Scott

Respectfully submitted,
    Dy. Carol Lindsey-Edwards

*Dy. Carol Lindsey-Edwards*

CC: Constable Reginald R. Brown Sr.
    Chief Larry Navarre
    Capt. John Lawton
    Lt. Thomas Wagner