**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**RHEA DAVIS,**                                 *

        *Plaintiff,*                        *        **CIVIL ACTION NO. 16-297-BAJ-RLB**

**VERSUS**                                      *

                             *

**BATON ROUGE CITY CONSTABLE'S**  *        **JUDGE BRIAN A. JACKSON**
**OFFICE,**                                     *

        *Defendant*                      *        **MAGISTRATE JUDGE**
                                                *        **RICHARD L. BOURGEOIS**
                                                *
                                                *        **JURY TRIAL DEMANDED**

* * * * * * * * * * * * * * * * * * * * * * * * *

## DECLARATION OF RHEA DAVIS

I, Rhea Davis, declare as follows:

1. I am an individual of the full age of majority and am competent to testify to the matters set forth herein.

2. I have personal knowledge of the facts set forth herein.

3. I am domiciled in West Baton Rouge Parish, Louisiana.

4. I am an African American female.

5. In 2004, I graduated from Louisiana State University (LSU) with a degree in criminology.

6. I was employed as a police officer by the LSU Police Department from 2004 to 2008 and from 2009- 2010.

7. On or about January 19, 2010, I began working for Baton Rouge Constable's Office as a Deputy Officer in the Jail Division.

8. In early 2012, I was promoted to the position of corporal.

9. I was second in command in the Jail Division.



10. I had supervisory responsibility and was awarded a company vehicle.

11. In 2013, I was named Jail Deputy of the Year.

12. Also in 2013, I was recognized as the Baton Rouge City Constable's Deputy of the Year.

13. After Terrica Williams resigned as Jail Sergeant in 2013, I was promoted to the role of interim Jail Sergeant.

14. When the Jail Sergeant position became available, I applied. I was on maternity leave when I applied.

15. I took and passed the civil service sergeant's examination to qualify for the position

16. I obtained the top exam score.

17. I was interviewed by Constable Reginald Brown, Chief Deputy Constable Lawrence Navarre, and Chief of Operations, John Lawton.

18. My interview lasted nearly an hour.

19. Another female deputy and one male deputy applied for the Jail Sergeant's position.

20. Travis Brooks was selected as Defendant's Jail Sergeant.

21. I was informed by my colleagues, while on maternity leave, that my position as corporal had been eliminated or vacated.  I was no longer the jail corporeal. I was a deputy.

22. I had to train Sergeant Brooks for the Jail Sergeant's position once he became my boss.

23. One month later, a position in Defendant's Judicial Enforcement Division became available.

24. The position principally required a deputy to serve subpoenas.

25. I have served warrants before.

26. I applied.

27. Deputy Anthony Hayes was selected for the position.

28. I trained Deputy Hayes when he first hired on.

29. When Deputy Hayes was selected for the job, he had only been employed by the Constables Office for less than one year.

30. I filed a Charge of Discrimination with the Equal Employment Opportunity Commission ('EEOC") alleging that my employer had discriminated against me because of my gender.

31. After investigating my allegation, the EEOC issued a "Determination" indicating that evidence existed that gender played a role in my employer's hiring decisions. (See attached EEOC Determination Correspondence)

32. After I filed an EEOC Charge, I told Sergeant Brooks, that a deputy that I supervised violated a direct order.

33. After I reported the matter, I drafted a written statement detailing the incident.

34. Sergeant Brooks met with the deputy to discuss the alleged insubordination.

35. Following his meeting with the deputy, Sergeant Brooks met with me and informed me that the deputy alleged that I was using illegal drugs.

36. Without conducting any preliminary investigation or asking me any questions, I was placed on administrative leave and an Internal Affairs investigation was initiated against me.

37. I was ordered to submit to a drug test pursuant to the investigation.

38. I was required to submit a hair sample and a urine sample.

39. No other deputy employed by Defendant was ever ordered to take a drug test by submitting a hair sample.

40. The results of my drug tests were negative.

41. Thereafter, I was ordered to take a psychological "fit for duty" examination before I could return to work.

42. My "fitness" as an officer has never been questioned until now.

43. Even if I passed the "fitness" exam, my employer informed me through a letter that I would only be allowed to return to work if I agreed to be transferred to another division -court room security- a division where I would have little or no seniority.

44. While on administrative leave, after my drug test results proved to be negative, I was denied the opportunity to work security "details," which was part of the compensation package that my employer promised me during the hiring process.

45. Depending on the type of event, I could expect to be paid as much as $45.00 an hour for working security at an event such as an LSU football game.

46. In an effort to comply with my employer's request to take a "fitness" for duty exam, my attorney and my employer's attorney agreed that the exam would be verbal only.

47. When I showed up for the exam, I was informed that it was going to be a written exam. I left.

48. I was forced to resign my employment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2017.

_R. Davis_

**RHEA DAVIS**

**LOUISIANA COMMISSION ON HUMAN RIGHTS**

P. O. Box 94094
Baton Rouge, LA 70809
Office: (225) 342-6969
Fax (225) 342-2063



Rhea Davis
6630 Poinsettia Drive
Baton Rouge, LA 70812

Complainant

and

Charge Number: 27A-2014-00013

Baton Rouge City Constable
233 St. Louis Street
Baton Rouge, LA 70802

Respondent

## **DETERMINATION**

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the subject filed under LSA-R.S. 23:301 et seq., as amended (Louisiana Employment Discrimination Law – LEDL) and Title VII of the Civil Rights Act of 1964, as amended (Title VII).

The Respondent is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, et seq. Timeliness and all other requirements for coverage have been met. Complainant alleged that she was discriminated against in violation of the LEDL and Title VII, in that she was denied a promotion for the Jail Sergeant position based on her sex (female).

Examination of evidence indicates the Complainant began her employment on January 19, 2010 as a Deputy and was later promoted to Corporal and Jail Supervisor. She alleges that in January 2014, she interviewed for the Jail Sergeant position and was denied the promotion. The Complainant states the Respondent instead hired Travis Brooks (male) whom the Complainant alleges she is more qualified.

In addition, the Complainant alleges that she subsequently applied for and was denied a position in the Judicial Enforcement Division. The Complainant alleges that Deputy Anthony Haynes (male) was hired for the position although Deputy Haynes did not have the experience or qualifications that she did.



EXHIBIT
B-1

Respondent contends that the Complainant was not offered the position of Jail Sergeant because the Constable determined Travis Brooks was more qualified. Additionally, the Respondent asserts that the position in the Judicial Enforcement Division is not a promotion and offers no pay incentives. Respondent states that this position is a transfer. Respondent further asserts that Deputy Haynes had previous experience in a law enforcement position in judicial process and the Complainant had none.

Sufficient evidence supports the fact that the failure to hire the Complainant in the deputy constable position in the Judicial Enforcement Division constitutes a tangible employment action. During witness interviews, Major Reginald Brown stated that his decision to hire Travis Brooks was in part due to Travis Brooks' diverse experience within the Constable office. Travis Brooks' diverse experience was gained due to the Respondent deciding to transfer Brooks from one division to another. Thus, based on the criteria used to make promotion decisions, the evidence shows that the decision to not hire the Complainant for the position in the Judicial Enforcement Position would make her a less qualified applicant for future opportunities.

Additionally, sufficient evidence exists that brings into question the veracity of the Respondent's explanation of its decision to not hire the Complainant for the deputy constable position in the Judicial Enforcement Division. During witness interviews, inconsistent testimony was given by three separate hiring officials as to why the Complainant was not hired for the position. Major Reginald Brown stated that Deputy Haynes' "street experience" was the determining factor. Captain John Lawton stated that it was best for the office keep the Complainant in the Jail Division because she was a "tremendous asset to the position", and he did not want to "cripple the [Jail] Division" by hiring a new corporal after recently hiring a sergeant with little Jail Division experience. Captain Lawton further stated that the experience between Haynes and the Complainant was not considered in making the decision. Chief Larry Navarre stated that the Complainant was not hired because the Constable "probably did not want to put a female in that position" because it "requires the employees to serve papers in certain neighborhoods and those areas are dangerous."

Furthermore, a genuine issue of fact exists as to the truth of the Respondent's explanation regarding the selection of Travis Brooks as Jail Sergeant over the Complainant. Many of the witnesses stated that the Complainant was the more qualified candidate. Very few witnesses state that Travis Brooks was more qualified. Additionally, Respondent's decision to not hire the Complainant in the Judicial Enforcement Division based on sex less than two months after being denied the Jail Sergeant position creates an inference that sex was a motivating factor in the selection of Jail Sergeant. Also, statements by hiring officials during witness testimony shows that applicants' sex was used as a determining factor for the Jail Sergeant position in the past.

Based on the analysis, I have determined that the evidence obtained during the investigation indicates that the Respondent improperly used sex as a motivating factor to deny the

Complainant a promotion. Additionally, the Respondent used sex as a determining factor to deny the Complainant a subsequent position for which she interviewed.

Upon finding that there is reason to believe that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practice by informal methods of conciliation.

Therefore, the Commission invites the parties to join with it in reaching a just resolution of this matter. The confidentiality provision of Title VII and the Commission regulations apply to information obtained during conciliation. If the Respondent declines to discuss settlement, or when, for any reasons, a settlement acceptable to the LCHR's Executive Director is not obtained, the Executive Director will inform the parties and advise them of the court enforcement alternatives available to the aggrieved person and the Commission.

Failure to contact the Commission within fourteen (14) business days of receipt of this letter of determination will indicate an unwillingness to engage in conciliation.

You are reminded that Federal and State laws prohibit retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. The provisions apply regardless of the Commission's determination on the merits of the Charge.

On behalf of the Commission:

1/15/2015
Date

Loyce Pierce Wright
Executive Director

Enclosures:

Copy of the Charge of Discrimination
Proposed Conciliation Agreement