UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RHEA DAVIS                                                                  CIVIL ACTION

VERSUS

BATON ROUGE CITY
CONSTABLE'S OFFICE                                         NO.: 16-00297-BAJ-RLB

RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 9)** filed by the Baton Rouge City Constable's Office (hereinafter "Constable's Office" or "Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 56. Through its motion, Defendant seeks summary judgment on Rhea Davis' ("Plaintiff") Title VII claims of gender discrimination and retaliation. Plaintiff filed a memorandum opposing Defendant's motion. (Doc. 16). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For reasons that follow, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

Plaintiff was employed as a Deputy Constable for Defendant from January 19, 2010 until mid-to-late 2012, at which time she received a promotion to the position of Jail Corporal. Plaintiff retained that position her resignation on January 2, 2015. (*See* Doc. 1-2). During her employment, Plaintiff avers that she successfully executed her job duties and responsibilities and was recognized as an exemplary employee. (Doc. 1-2 at ¶ 4).

1

In early 2014, when the position of Jail Sergeant of the Constable's Office became available, Plaintiff, along with three other applicants, applied. (Doc. 1-2 at ¶ 20). Plaintiff alleges that although she received the highest score on the civil service sergeant examination and had the most experience as a Deputy Constable of the three candidates who applied for the position, Defendant hired Deputy Constable Travis Brooks (hereinafter Sgt. Brooks), a male employee and allegedly the only male applicant, for the Jail Sergeant position. (Doc. 1-2 at ¶ 21). When Plaintiff inquired about why Sgt. Brooks was chosen for the position, Plaintiff alleges that she was told the final decision was based on seniority, although seniority was not listed as a criteria to be considered for the position.[1] (Doc. 1-2 at ¶ 22).

A few weeks later, a position in Defendant's Judicial Enforcement Division became available. (Doc. 1-2 at ¶ 26). After speaking with Sergeant Ganiyu Jimoh (hereinafter "Sgt. Jimoh"), the supervisor in the Judicial Enforcement Division, about the position, Plaintiff applied and was thereafter interviewed. (Doc. 1-2 at ¶¶ 26-30). Following her interview, Plaintiff learned that Deputy Constable Anthony Haynes (hereinafter "Deputy Haynes"), a male deputy who had been working for Defendant for less than a year, was selected for the vacant position in the Judicial Enforcement Division. (Doc. 1-2 at ¶ 30). After speaking with Sgt. Jimoh, Plaintiff learned that

---

[1] In her motion, Plaintiff refers the court to Constable Brown's testimony, wherein he listed the following qualities as necessary to perform the duties of the Jail Sergeant position: 1. The applicant must be a deputy; 2. The applicant must have the work experience or the work ethic to work in the jail; 3. The applicant must continue to grow in knowledge and be able to work with his or her colleagues; and 4. The applicant must show up for work and show up on time. (*See* Doc. 16 at pp. 3-4; Brown Depo. at pp. 77-78, 91-92). Other than this description, the parties have not provided the Court with an official job description for the Jail Sergeant position.

despite being highly recommended for the position, Constable Brown selected Deputy Haynes. (Doc. 1-2 at ¶ 31).

In response to being overlooked for the position of Jail Sergeant and the position in Defendant's Judicial Enforcement Division, Plaintiff filed her first EEOC Charge of Discrimination ("the Discrimination Charge") on April 16, 2014. (Doc. 1-2 at ¶ 32; Doc. 9-3). Therein, Plaintiff complained that, although she interviewed for the Jail Sergeant position and was told that she was "exceptionally qualified," Defendant hired Deputy Brooks for the position. (Doc. 9-3 at p. 2). Plaintiff also alleged that, after applying for a position in Defendant's Judicial Enforcement Division, Defendant hired Deputy Haynes, who had only been employed by Defendant for eleven months. (*Id.*).

Shortly after Plaintiff filed the Discrimination Charge, she was accused by an employee to have used illegal drugs recreationally. (Doc. 1-2 at ¶ 36). That same day, Defendant placed Plaintiff on paid administrative leave pending an internal investigation into the accusations of her alleged drug use. (Doc. 1-2 at ¶ 38). In accordance with the underlying investigation, Plaintiff was required to submit both urine and hair samples to test for drugs, a protocol which Plaintiff argues was contrary to Defendant's practice. (Doc. 1-2 at ¶ 38). While the investigation was ongoing, Plaintiff resigned from the Constable's Office. After Plaintiff resigned from her employ with Defendant, she filed a second Charge of Discrimination with the Louisiana Commission on Human Rights ("the Retaliation Charge") on January 15, 2017. In her complaint, Plaintiff stated her belief that she was placed on

administrative leave pending the outcome of an internal investigation in retaliation for filing the Discrimination Charge. (Doc. 9-4 at p. 2).

Plaintiff filed the instant action on January 12, 2016, asserting claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S. §§ 2000e, *et seq.*, and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.* ("LEDL").[2] Specifically, Plaintiff's Petition outlines five discrete actions—which Plaintiff's petition calls "disparate treatment"—taken by Defendant that she believes either amount to or are evidence of violations of Title VII and the LEDL: i) temporarily changing Plaintiff's work hours from 7:00 a.m.-3:00 p.m. to 8:00 a.m.-5:00 p.m. after she notified Defendant that she was pregnant and would need to go on "light duty status"; ii) promoting Sgt. Brooks, a male employee, over Plaintiff to the position of Jail Sergeant; iii) allegedly demoting Plaintiff from her position as Jail Corporal while she was on maternity leave; iv) promoting Deputy Haynes, a male employee, over Plaintiff to a position in Defendant's Judicial Enforcement Division; and v) placing Plaintiff on administrative leave and failing to reinstate her after receiving a complaint alleging misconduct. (*See* Doc. 1-2 at pp. 6-13). On February 21, 2017, Defendant filed the instant motion for summary judgment. (*See* Doc. 9).

## II.   DISCUSSION

### A. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[2] The LEDL applies the same standards and burden shifting framework used for Title VII claims. *See Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed.Appx. 322, 327 (5th Cir. 2008).

4

material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### B. ANALYSIS

#### 1. Arguments of the Parties

In its motion, Defendant first argues that Plaintiff's claims arising from the alleged schedule change and demotion should be dismissed because neither the Discrimination Charge nor the Retaliation Charge contain factual allegations identifying those claims. (Doc. 9-1 at p. 9). Further, Defendant avers that the alleged schedule change, demotion, and placement on administrative leave do not amount to "adverse employment action" under Title VII because they are not "ultimate employment decisions." (Doc. 9-1 at pp. 11-14). Because of this, Defendant asserts that Plaintiff cannot establish a prima facie case for gender discrimination on these grounds. (*Id.*). Finally, Defendant argues that, assuming Plaintiff's ability to make out a prima facie case for discrimination, Defendant can provide a legitimate, nondiscriminatory explanation for each instance of alleged disparate treatment for which Plaintiff cannot establish pretext. (Doc. 9-1 at pp. 14-17).

Plaintiff counters that she did not include factual allegations outlining the alleged schedule change and demotion to establish separate Title VII claims on those grounds, but instead pleaded those allegations as further support of her larger narrative of gender discrimination. (Doc. 16 at p. 10). Plaintiff further argues that Defendant's stated reasons for not promoting or hiring her were a pretext for

discrimination and therefore summary judgment based on Defendant's proffered explanations for promoting and hiring male deputies over Plaintiff are not proper grounds for granting summary judgment. (Doc. 16 at pp. 13-14). Finally, in the face of Defendant's alleged failure to discuss the merits of Plaintiff's Title VII retaliation claim, Plaintiff offers affirmative proof demonstrating that she can prevail on that claim. (Doc. 16 at pp. 16-17).

At the outset, the Court disposes of Defendant's arguments surrounding Plaintiff's failure to exhaust administrative remedies relative to her schedule change and demotion "claims." Plaintiff has urged that she did not include those allegations as independent claims, and the Court will therefore consider the facts alleged concerning an alleged schedule change and demotion when assessing the viability of Plaintiff's substantive claims. The Court notes, however, that assuming Plaintiff included those allegations as independent grounds for Title VII relief, Defendant's arguments regarding exhaustion would prevail, as neither of Plaintiff's EEOC Charges include allegations identifying the schedule change and demotion.[3]

---

[3] It is well settled that "[u]nder Title VII . . . a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court." *Garcia v. Penske Logistics, L.L.C.*, No. 15-40061, 2015 WL 6688141, at *2 (5th Cir. Nov. 2, 2015) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379. When a plaintiff files a charge with the EEOC, the "scope" of the charge is to be construed liberally. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.7 (5th Cir. 1994) (citing *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). Nonetheless, the ultimate "scope" of the charge is limited to the "scope" of the EEOC investigation, which can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The Discrimination Charge filed by Plaintiff does not include any details concerning the schedule change and demotion of Plaintiff. Even under the most liberal construction of Plaintiff's EEOC charge, the Court cannot ascertain that Plaintiff included any complaints about the alleged change in her schedule or her alleged demotion from Jail Corporal to Deputy Constable while on maternity leave before the Commission in the form of a formal complaint. Accordingly, the Court

2. Title VII Gender Discrimination Claims

In order to establish a prima facie case of discrimination, a plaintiff must show that (1) she belongs to a group protected by Title VII, (2) she applied for and was qualified for a job for which the employer was seeking applicants, (3) she suffered an adverse employment action, and (4) she was replaced by someone not belonging to the protected class, or that similarly situated employees not belonging to the protected class were treated more favorably under nearly identical circumstances. *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007). Once the plaintiff establishes a prima facie case of discrimination, the employer then has the burden of articulating a legitimate, nondiscriminatory reason for the employment decision. *See, e.g., Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* The defendant has the burden of production in this respect, not the burden of persuasion, and the court is not to make any credibility assessment at this stage. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant successfully rebuts the plaintiff's prima facie case, the plaintiff must be given "the full and fair opportunity to demonstrate" that the reason articulated by the employer is in fact a pretext for unlawful discrimination. *Bauer*, 169 F.3d at 966 (citations omitted).

---

finds that there is no genuine issue of material fact regarding whether Plaintiff exhausted available administrative remedies concerning those claims.

In its motion, Defendant did not challenge Plaintiff's ability to make out a prima facia case for gender discrimination based on Defendant's failure to promote her to the position of Jail Sergeant and its failure to transfer Plaintiff to a position in its Judicial Enforcement Division. Defendant only seeks summary judgment based on its assertion that each alleged instance of gender discrimination was based on a legitimate, non-discriminatory reason, for which Plaintiff is unable to establish pretext.

### a. *Failure to Promote to Jail Sergeant*

Defendant argues that it hired Brooks over Plaintiff for the Jail Sergeant position because Brooks was "the best person available" for that position at the time of his hire. (Doc. 9-1 at p. 15). In support of this assertion, Defendant cites to affidavits submitted by Sgt. Brooks and Constable Brown, both of whom attested to Sgt. Brooks' being qualified for the position. (*See* Docs. 9-5, 9-6). Based on uncontroverted evidence, Sgt. Brooks was a Reserve Deputy, serving as backup security for regular Deputy Constables, for approximately two years before obtaining a full-time position with the Constable's Office. (Doc. 9-6 at ¶¶ 2-4). As a requirement for serving as a Reserve Deputy, Sgt. Brooks volunteered approximately 2,000 hours of service to the community. (*Id.* at ¶ 4). After he was hired as a full-time Deputy Constable in October of 2006, Sgt. Brooks worked in the City Jail and was thereafter assigned to work in Courtroom Security, where he worked until his promotion to Jail Sergeant in 2014. (*Id.* at ¶¶ 5-10). Sgt. Brooks had also received the Peace Officer Standard and Training Certification ("POST Certification") for Corrections, and served as a

Defensive Tactics Instructor at the time of his promotion. (*Id.* at ¶¶ 12-14). Sgt. Brooks had also served on the Delta Drug Task Force on behalf of the Constable's Office, where he assisted in addressing drug trafficking crimes in the region, and had been involved in the Honor Guard as well as completed training for Tactical Mountain Bike. (*Id.* at ¶¶ 15-17).

In response, Plaintiff submits evidence in support of her argument that she was far more qualified than Sgt. Brooks for the Jail Sergeant position. Specifically, Plaintiff provides testimony that prior to joining the Baton Rouge Constable's Office in 2004, she earned a Bachelor's Degree in Criminology from Louisiana State University and was thereafter employed by the LSU Police Department as a police officer from 2004-2008 and from 2009-2010. (Doc. 16-3 at ¶¶ 5-6). Plaintiff then began her employment with Defendant, where she was promoted to the position of Corporal and was given supervisory responsibility and a company vehicle. (*Id.* at ¶¶ 7-10). Plaintiff was also named Jail Deputy of the Year in 2013, and was recognized as the Baton Rouge City Constable's Deputy of the Year. (*Id.* at ¶¶ 11-12).

In further support of her argument, Plaintiff refers the Court to the deposition testimony of Chief Deputy Constable Lawrence Navarre ("Chief Deputy Navarre"), who, along with Captain John Lawton ("Captain Lawton"), Defendant's Chief of Operations, was involved in the hiring process for the Jail Sergeant position along with Constable Brown. Chief Deputy Navarre testified that Captain Lawton wanted a male to fill the Jail Sergeant position, not a female. (Navarre Depo. at p. 79). Plaintiff also submitted the affidavit of Lieutenant Vernon Scott ("Lieutenant Scott"),

who testified that Constable Brown did not want to hire or promote a female deputy during her childbearing years so that "they could not take maternity leave on [him]." (Doc. 22 at ¶¶ 9-10).

Without opining about whether Sgt. Brooks was more qualified than Plaintiff for the Jail Sergeant position, the Court finds that Plaintiff has presented evidence that precludes summary judgment at this stage. Assuming Sgt. Brooks was, in fact, more qualified for the Jail Sergeant position than Plaintiff and was therefore properly promoted to the position irrespective of gender considerations, the testimony of Chief Deputy Navarre and Lieutenant Scott indicate that the promotion process may have been a pretext for gender discrimination within Defendant's ranks. Because of the competing evidence regarding the reason for Defendant's failure to promote Plaintiff to the Jail Sergeant position, the Court finds that a genuine issue of material fact remains, and Defendant's motion for summary judgment on Plaintiff's gender discrimination claim arising from Defendant's failure to promote her to the Jail Sergeant position is **DENIED**.

### b. *Failure to Transfer to Judicial Enforcement Division*

Defendant also argues that its legitimate, non-discriminatory reason for hiring Deputy Haynes for the position within its Judicial Enforcement Division was to select the best person available for the position at the time of hire. Deputy Haynes received an Associate's Degree in Criminal Justice from Southern University in 1996, and thereafter obtained a Bachelor's Degree in Sociology from Southern University. (Doc. 9-7 at ¶¶ 7-8). Deputy Haynes received his POST Certification in 1993 and served as

11

a Police Officer for the University Police for Southern University from 1993-1995. (*Id.* at ¶¶ 11-12). Deputy Haynes then worked for the East Baton Rouge Sheriff's Office from 1995-1996, serving at the Parish Prison. (*Id.* at ¶ 13). From 1996-1999, Deputy Haynes was a Police Officer for the Department of Public Safety. (*Id.* at ¶ 14). He then served as a Probation Officer for the Department of Corrections for the State of Louisiana. (*Id.* at ¶ 15). Deputy Haynes also has an extensive military background, having served full-time in the United States Army from 1989 until 1992, and part-time in the National Guard from 1992 until 1996. (*Id.* at ¶¶ 17-18). Deputy Haynes also served in the Air Force Reserves from 2000-2002. (*Id.* at ¶ 19). Deputy Haynes was hired by Defendant as a Deputy Constable in 2013, and he worked as a Deputy Constable in the City Jail for less than a year before he was transferred briefly to Courtroom Security and thereafter to Judicial Enforcement in 2014. (*Id.* at ¶¶ 2-4). In light of Deputy Haynes' extensive law enforcement and military background, Defendant asserts that it had legitimate grounds for selecting Deputy Haynes over Plaintiff for the role of Deputy Constable in the Judicial Enforcement Division.

Plaintiff's primary objection to Deputy Haynes' qualification for the position stems from Deputy Haynes' short tenure with the Constable's Office prior to his promotion to the Judicial Enforcement Division. Relatedly, Plaintiff also argues that she was clearly more qualified because she trained Deputy Haynes before he was promoted over her. Finally, Plaintiff also refers the Court to Chief Deputy Navarre's deposition testimony, where he testified about his subjective belief that Plaintiff did

12

not get the position "[b]ased on her gender," among other reasons. (*See* Doc. 16-2 at p. 38).

First, the Court notes that Chief Deputy Navarre's testimony concerning the reason Plaintiff was not hired for the position in Defendant's Judicial Enforcement Division is somewhat confusing. Although Chief Deputy Navarre testified at his deposition about his belief that Plaintiff's gender was wrongly considered in deciding who would be hired for the position, he also implied that he had given the EEOC investigator a different reason why Deputy Haynes was hired and which was not altogether consistent with his deposition testimony. (Doc. 16-2 at pp. 37-39). However, to try to ascertain the veracity of Chief Deputy Navarre's statements at this point would be to consider whether he responded to inquiries credibly, a determination that the Court is not permitted to make at this time. Therefore, and notwithstanding the lack of clarity in Chief Deputy Navarre's deposition testimony, the Court finds that his statements regarding whether gender was a consideration in the selection process for the Judicial Enforcement position is enough to preclude summary judgment for this claim. Accordingly, the Court finds that because of the remaining issue of whether Defendant's offered reasons for promoting Deputy Haynes over Plaintiff were a pretext for discrimination, Defendant's motion for summary judgment on Plaintiff's gender discrimination claim arising from the failure to promote her to the Judicial Enforcement position is **DENIED**.

### 3. Title VII Retaliation Claim

Finally, Defendant seeks summary judgment on Plaintiff's Title VII retaliation claim on two grounds. First, Defendant argues that Plaintiff is unable to establish a prima facie case of retaliation because the alleged retaliatory action—placing Plaintiff on paid administrative leave pending an investigation of a complaint filed against her—does not qualify as legally actionable "adverse employment action" under Title VII. (Doc. 9-1 at p. 13-14). Second, Defendant argues that, even assuming Plaintiff suffered some adverse employment action in retaliation for her filing an EEOC complaint, Defendant had a legitimate, non-retaliatory reason for placing Plaintiff on paid administrative leave for which Plaintiff is unable to establish pretext. (*Id.* at pp. 16-17). That is, Defendant argues that it was justified in placing Plaintiff on paid administrative leave after Constable Brown received a complaint that Plaintiff was engaging in illegal drug use off the job and was doing so in a manner to avoid detection by typical City-Parish drug testing procedures. (*Id.*).

In response, Plaintiff does not explicitly state whether she alleges that being placed on indefinite administrative leave, *on its own*, amounted to adverse employment action for purposes of her Title VII retaliation claim. Instead, Plaintiff counters that the adverse employment action forming the basis of this claim derives from her being constructively discharged from her job. (Doc. 16 at p. 16). Plaintiff claims that the combination of her being placed on administrative leave due to allegedly unsubstantiated allegations of drug abuse by a subordinate employee, being forced to submit to drug screening and, after the drug screening presenting negative

14

results for drugs, and being forced to take a psychological examination before returning to work created working conditions that were so intolerable as to prompt her resignation. (*Id.* at pp. 16-17). Plaintiff also testified that she resigned after being informed that, were she to return from administrative leave, her position would change and she would be forced to answer to Lieutenant Vernon Scott, the individual who conducted the initial investigation into the allegations filed against Plaintiff. (Doc. 16-4 at pp. 60-61).

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, a plaintiff must first demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007) (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks and citations omitted). "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for

15

retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (internal quotation marks and citations omitted).

In addressing whether placing Plaintiff on paid administrative leave amounts to adverse employment action, the Court notes that Defendant's argument is grounded in its assertion that, for purposes of Title VII retaliation claims, adverse employment actions include only ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating an employee. (*See* Doc. 9-1 at pp. 11-12). However, for over a decade, the United States Court of Appeals for the Fifth Circuit has recognized that adverse employment action for purposes of Title VII retaliation cases is a bit more relaxed. It is true that before the United States Supreme Court's decision in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006), the Fifth Circuit held that only " 'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, and compensating, satisfy the 'adverse employment action' element of a prima facie case of retaliation." *E.g., Hunt v. Rapides Healthcare System, LLC*, 277 F.3d at 769 (emphasis omitted). In *Burlington Northern*, the Supreme Court clarified that the "adverse employment action" in Title VII retaliation concerns whether the challenged action is "materially adverse" in that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. The standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. Paid

16

administrative leave may constitute a retaliatory adverse employment action, dependent on the particular circumstances and context. *See Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 332 (5th Cir. 2009).

Here, the placement of Plaintiff on paid administrative leave does not alone amount to adverse employment action. During her time on administrative leave, Plaintiff's pay remained the same and she continued to enjoy the benefits of her employment pending resolution of the internal investigation triggered by the complaint of drug use. Although the evidence demonstrates that Plaintiff was required to return her office keys, firearm, badge, commission and unit keys as a condition of her leave, (*see* Doc. 9-10), none of these actions rise to the degree of adversity necessary to satisfy a Title VII retaliation claim. Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim based solely on Plaintiff's being placed on administrative leave is **GRANTED**.

However, the Court's ruling in this regard is not dispositive of whether Plaintiff's placement on administrative leave combined with other employment actions resulted in Plaintiff's constructive discharge. As previously noted, Plaintiff alleges that the adverse employment action forming the basis of her Title VII retaliation claim is her being constructively discharged from her job. To establish a prima facie case of retaliation based on constructive discharge, Plaintiff "must prove that 'working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.' " *Landgraf v. USI Film*

17

*Products*, 968 F.2d 427, 429-30 (5th Cir.1992) (quoting *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980)).

In determining whether a reasonable employee would feel compelled to resign, the Fifth Circuit has instructed district court to consider the relevancy of the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] ....

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Defendant did not raise Plaintiff's constructive discharge claim as a grounds upon which it seeks summary judgment. Accordingly, because both parties have not had an opportunity to address whether Plaintiff was constructively discharged, this issue is not properly before the Court, and the Court will pretermit any discussion of whether Plaintiff's placement on administrative leave, combined with other circumstances of employment, constitute constructive discharge.

### III. CONCLUSION

Given the conflicting evidence regarding the motive behind Defendant's decision to not select Plaintiff for two employment positions, there remain genuine issues of material fact regarding whether Plaintiff has viable gender discrimination

claims under Title VII and the LEDL. However, to the extent Defendant seeks summary judgment on the basis of Plaintiff's allegation of retaliation by placement on administrative leave with pay, Plaintiff has failed to establish that such action alone amounted to adverse employment action.

Considering the foregoing,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 9)** filed by Baton Rouge City Constable's Office is **GRANTED IN PART** and **DENIED IN PART** for the reasons stated above.

Baton Rouge, Louisiana, this 17th day of August, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**